35 C.C.P.A. (Patents)

### In re BOILEAU.
### Patent Appeals No. 5323.

Court of Customs and Patent Appeals.
June 17, 1947.

Rehearing Denied Sept. 29, 1947.

Norman E. H. Deletzke, of Chicago, Ill., for appellant.

W. W. Cochran, of Washington, D. C. (H. S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before BLAND, Acting Presiding Judge, and HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

O'CONNELL, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner who rejected all the claims in appellant's application for a patent for alleged improvements on a horizontal, wooden churn of the revolving drum type, and more particularly to the sanitary arrangement for the supporting of the shelves or baffles within the drum.

The references are: Hougland 2,104,462 Jan. 4, 1938; Godfrey 2,334,919 Nov. 23, 1943; Boileau 2,359,744 Oct. 10, 1944.

Appellant's application, filed January 11, 1940, is a "continuation in part" of his then co-pending and parent application, Serial No. 249,056, filed January 3, 1939, which, on October 10, 1944, matured into the reference patent to Boileau.

The application filed by appellant on January 11, 1940, was allowed on March 13, 1940, with four claims. Thereafter several additional claims were suggested to appellant for the purpose of interference and on July 27, 1940, an interference was declared between appellant's application and the application of one Godfrey, filed April 24, 1939. Priority of invention in that interference was awarded to the inventor Godfrey. Boileau v. Godfrey, 138 F.2d 67, 31 C.C.P.A., Patents, 723.

Appellant by amendment, filed December 20, 1943, canceled the claims in his application which correspond to the counts of the interference and submitted new claims, 10 to 16, inclusive, all of which were finally rejected by the Primary Examiner. His action in so doing was affirmed by the Board of Appeals and appellant has brought this appeal to review that decision of the board.

Appellant does not dispute that the cited references disclose a number of elements that are included in the claimed combination of elements but contends that the references do not disclose all of the essential elements of the claimed combination, and that such comparable elements as are disclosed by the references function in a manner different from those set forth in the appealed claims.

The involved structure comprises numerous details. Claim 10, portions of which have been here emphasized by appellant as patentably distinguishing the claim from the disclosure of the prior art, is illustrative. It reads as follows: "10. A churn and butterworker comprising, in combination, a processing cylinder disposed to rotate about its longitudinal axis, opposed cylinder heads for said cylinder, opposed rotatable supports adjacent the outer faces of said cylinder heads, a plurality of fixed *flat butterworker shelves having relatively narrow mid-sections and varying in width substantially throughout their entire length* and extending from cylinder head to cylinder head remote from the longitudinal axis of said cylinder, *a fixed splitting bar disposed along the longitudinal central portion of said cylinder head, a substantially rectangular flat unloading shelf extending from cylinder head to cylinder head, said butterworker shelves being so constructed and arranged as to coact with said splitting bar to direct the butter being worked toward the central portion of said cylinder,* and tightenable tie rod means individual to and passing through each of said shelves through said cylinder heads and through said rotatable supports for supporting said shelves and said cylinder heads directly upon said rotatable supports, whereby shelf loading stresses are transferred directly to said rotatable supports and said shelves and cylinder heads are compressed between said rotatable supports."

More specifically, the structure defined by the appealed claims comprises a cylindrical wooden churn drum or cylinder of the conventional stave type disposed to rotate about its longitudinal axis and having two respective drum heads or end walls. Within the cylinder are three shelves which combine with a central splitting bar provided with an axial tie rod hole extending throughout the entire length of the splitting bar. The ends of the splitting bar are mortised into the respective drum heads in the complementary recesses centrally located in the interior surface of the drum heads.

One of the three shelves, hereinbefore described, is referred to in appellant's specification as the unloading shelf and is comprised of two substantially rectangular boards with tie rods extending therethrough. The other two shelves, as shown in the drawing, are relatively narrow at the mid-section of the cylinder and relatively wider toward and at each end of the cylinder.

As illustrated in the drawings, the shelves, having tie rod holes therethrough, are supported at the ends by tie rods which pass through the holes in the shelves, and the recesses in the cylinder heads, and the terminal plates of the supporting gudgeon arms. By tightening the nuts on the opposite ends of the tie rods, a rigid churn construction is secured.

The patent to Hougland relates to a churn and butterworker having a cylindrical processing churn body preferably constructed of wood and disposed for rotation about its horizontal axis.

Mounted within the cylinder and extending from end to end thereof are two oppositely disposed shelves, one of which is an unloading shelf composed of two plane wooden members, angularly disposed to each other. The outer edge of one such member "extends in parallel, slightly spaced relation to the elements of the cylindrical body 5, that is, in parallel relation to the axis of the churn body."

Extending along the axis of and within the central portion of the cylinder is a bar adapted to coact with other members of the churn in retarding an end of the mass of butter on the shelves successively during the working operation.

In the examiner's statement it was pointed out that "The patent to Hougland shows it is cited to show it is old to provide a central splitting bar in a rotary churn. The splitting bar 33 of Hougland is the full equivalent of the splitting bar 29 of the application. The edges of the shelves 22 and 23 nearest the cylindrical wall of the drum are space*d* from the cylindrical wall as in the application."

The patent to Godfrey relates to a churn and butterworker of the revolving drum type, comprising, in combination, a cylindrical barrel of wood stave construction

having its opposed ends closed by two respective heads, also of wood.

The barrel is endwardly supported by a front and rear gudgeon. A series of three longitudinal shelves spaced about the circumference of the cylinder at equal intervals form an integral part of the wall structure. For further strength, the ends of the shelves are mortised into each of the respective cylinder heads.

Each of the three longitudinal shelves has a longitudinal bore through its center portion, within which is positioned a tie rod extending endwardly through the respective cylinder heads and through the overlying gudgeons by which the cylinder or barrel is endwardly supported. The threaded ends of the tie rods carry nuts by which the two gudgeon arms and terminal pads are drawn tightly together to form a rigid assembly.

The reference patent to Boileau is appellant's own patent. The Solicitor for the Patent Office states with emphasis that such patent "not issued more than one year prior to filing the instant application, is of course not prior art, but is pertinent here merely as to what is *claimed* therein."

Claim 6 of the patent to Boileau reads as follows: "6. A churn and butterworker having, in combination, a processing drum horizontally disposed to rotate about its axis, a plurality of fixed butterworking shelves having relatively narrow mid-sections and extending from end to end of said drum adjacent the inner periphery thereof, a fixed splitting bar axially disposed in said drum, and a substantially rectangular unloading shelf, said butterworking shelves being of varying width substantially throughout their entire length and being so constructed and arranged as to direct the butter being worked toward the central portion of said drum, where it may be picked up as a unitery mass by the unloading shelf."

The Primary Examiner in his rejection of the claims here involved compared them not only with the counts of the interference upon which Godfrey was awarded priority of invention but also with the allowed claims in appellant's previously filed application.

The examiner pointed out in detail the elements of the appealed claims which he considered were disclosed by the claims or applications of the cited references. He held in effect, if not in express terms, that the features included in the appealed claims did not constitute subject matter patentable over the art of record. The appealed claims were further rejected by the examiner "as specifying an aggregation of the subject-matter lost in interference with that claimed in his allowed application and that disclosed in the patent to Hougland."

The Board of Appeals in affirming the action of the examiner stated that it was not satisfied that the appealed claims were rejectable "as specifying an aggregation," but that it was satisfied, for reasons given by the examiner, that the assembly defined by the appealed claims "does not represent an invention." After construing the statement of the examiner relative to the disclosure of the art of record, the board stated: "It appears that all applicant has done has been to assemble in one structure desirable features previously known, thereby not creating an invention."

Appellant petitioned the board to reconsider its decision. The board reconsidered its decision but declined to make any change therein.

Appellant propounds six questions which he alleges are involved in the determination of this appeal. Those questions have been analyzed by the court in the light of the facts presented in the record and as a result we find that the only material question here involved is whether or not the appealed claims define subject matter that is patentable over the combined disclosures of the prior art of record.

In the determination of that question the court may not properly hold that appellant is the first inventor of anything that is not patentably distinct from the subject matter of the counts involved in the interference hereinbefore described. See In re Youker, 77 F.2d 624, 22 C.C.P.A., Patents, 1294. Furthermore, the claims of appellant's issued patent may be properly considered in this case in determining the question of the patentability of the claims

on appeal. See In re Barge, 96 F.2d 314, 25 C.C.P.A., Patents, 1058.

One of the limitations included in each of the appealed claims calls for a shelf of varying width combined with a splitting bar on the inside of the churn. Claim 6 of appellant's issued patent calls for shelves having relatively narrow mid-sections, "a fixed splitting bar axially disposed in said drum," and butterworking shelves "of varying width."

Moreover, the splitting bar on the inside of the churn is an element old in the art, as disclosed in the patent to Hougland, and appellant has failed to show that the splitting bar in Hougland functions in a manner that is patentably distinct from the splitting bar defined by the appealed claims.

A processing cylinder or drum together with the limitations of claim 10 which are relied upon as defining patentable subject matter over the disclosure of the art of record, are obviously disclosed by the limitations recited in claim 6 of appellant's issued patent and the disclosures of the patents to Hougland and Godfrey.

Furthermore, the "whereby" provision contained in the last clause of claim 10, which appellant contends defines a function of the described structure that renders it patentably distinct from the disclosure of the art of record, is obviously a statement of result which of itself cannot impart patentability. In re Crecelius, 86 F.2d 399, 24 C.C.P.A. Patents, 718.

The respective features emphasized by appellant as defining other patentable subject matter in claims 11, 12, 13, 14, 15, and 16, which include the plurality of churn shelves varying in width, "tie rod means," a cylinder encompassing and mounted on cylinder heads, the spacing of the shelves away from the drum of the churn, and recesses "adapted to receive the end of a butterworker means," are structural features for the most part hereinbefore discussed in connection with claim 10. Those claimed features whether or not discussed have not been shown by appellant, however, to constitute subject matter patentable over the combined disclosures of the reference patents.

We have examined all the arguments and authorities cited by appellant in support of his position here and consider that no error has been shown by him in the holding of the board that the combination of elements defined by the appealed claims does not involve invention.

In view of that conclusion, the court deems it unnecessary to present and pass upon subordinate points presented by appellant and the decision of the Board of Appeals is accordingly affirmed.

Affirmed.

By reason of illness, GARRETT, Presiding Judge, was not present at the argument of this case and did not participate in the decision.